IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARY K. PRIMROSE,<br>    Plaintiff | :<br>: |
| | :   Civil Action No. 1:11-00835 |
| v. | : |
| | :   (Chief Judge Kane) |
| TRENT MELLOTT and TOWNSHIP OF<br>UPPER ALLEN,<br>    Defendants | :<br>:<br>: |

**MEMORANDUM**

Presently pending before the Court are Defendants' motion for summary judgment (Doc. No. 11) and Plaintiff's motion for partial summary judgment (Doc. No. 12). For the reasons stated more fully herein, the Court will deny Plaintiff's motion and will grant Defendants' motion in part and deny the motion in part.

**I.    BACKGROUND**[1]

Defendant Trent Mellott is a police officer employed by Defendant Township of Upper Allen ("Upper Allen"). (Doc. No. 11 ¶¶ 23-24.) On May 4, 2009, he responded to a call made by Dixie Anderson, a resident of the Geneva Greens apartment complex, located in Cumberland County, Pennsylvania. (Id. ¶¶ 4, 35; Doc. No. 13 at 2.) Upon his arrival at Geneva Greens, Defendant Mellott obtained written statements from Ms. Anderson, Plaintiff Mary K. Primrose, who also resides at Geneva Greens, and Tammy Zechman, a Geneva Greens employee. (Doc. No. 11 ¶ 25.) The parties agree that an argument between Plaintiff and Ms. Anderson, at least part of which occurred in the presence of Ms. Zechman, prompted Ms. Anderson to call the police. (Id. ¶¶ 4-5; Doc. No. 13 at 2.) They, however, dispute the accuracy of the statements

---

[1] The following facts are undisputed unless otherwise noted.

1

made by Plaintiff, Ms. Anderson, and Ms. Zechman. According to Ms. Zechman's statement, Plaintiff had raised her voice, waved her finger close to Ms. Anderson's face, and called Ms. Anderson a "noisy bitch." (Doc. No. 11 ¶¶ 26, 28, 36; Doc. No. 12-2 at 12.) Similarly, Ms. Anderson reported that Plaintiff was angry, screamed at her, repeatedly used the word, "fuck," and called her a "noisy bitch." (Doc. No. 11 ¶¶ 29-33; Doc. No. 12-2 at 11.) Plaintiff, however, stated that, although she was angry "about car parking," she only called Ms. Anderson a "nosy biddy" and pointed her finger. (Doc. No. 11 ¶ 41; Doc. No. 12-2 at 13.)

Plaintiff avers that after she provided a written statement to Defendant Mellott, he instructed her to return to her apartment and not to leave until he spoke with her again. (Doc. No. 11 ¶¶ 13-15.) Thereafter, Defendant Mellott arrived at her apartment and issued her a summons for disorderly conduct pursuant to 18 Pa. Cons. Stat. § 5503(a)(3). (Id. ¶¶ 16-17; Doc. No. 12-2 at 14.) Plaintiff also asserts that Defendant Mellott informed her that she was "arrested for disorderly conduct," but she admits that he never touched her, placed handcuffs on her, or removed her from the apartment. (Doc. No. 11 ¶¶ 18, 20-21; Doc. No. 23 ¶¶ 17-18, 20-21.) Plaintiff challenged the summons in the Court of Common Pleas of Cumberland County, Pennsylvania, Magisterial District No. 09-3-05, and Magisterial District Justice Mark W. Martin found her not guilty of disorderly conduct following a summary trial held on July 16, 2009. (Doc. No. 12-4 at 23-24.)

Plaintiff initiated this action by filing a complaint on May 4, 2011, raising claims under the First and Fourth Amendments, as well as a state-law false arrest claim, against Defendant Mellott and a failure-to-train claim against Defendant Upper Allen. (Doc. No. 1.) The parties filed their respective motions for summary judgment on May 14, 2012. (Doc. Nos. 11, 12.)

II.     **STANDARD OF REVIEW**

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A factual dispute is material if it might affect the outcome of the suit under the applicable law, and it is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986).  At summary judgment, the inquiry is whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law. Id. at 251-52.  In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the non-moving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Grp., Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is warranted. Celotex, 477 U.S. at 322.  With respect to the sufficiency of the evidence that the non-moving

party must provide, a court should grant summary judgment where the non-movant's evidence is merely colorable, conclusory, or speculative. Anderson, 477 U.S. at 249-50. There must be more than a scintilla of evidence supporting the non-moving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).

## III.    DISCUSSION

Defendants argue that they are entitled to summary judgment because Plaintiff has not set forth facts supporting the existence of her false arrest, her First Amendment retaliation claim, and her failure-to-train claim.[2] (Doc. No. 15 at 2-11, 16-22.) In the alternative, they contend that Defendant Mellott is entitled to qualified immunity. (Id. at 11-15.) Plaintiff has also moved for summary judgment on her First Amendment claim. (Doc. No. 12.) The Court will address each claim in turn.

### A.    False Arrest Claims

Plaintiff raises false arrest claims against Defendant Mellott under both the Fourth Amendment and state law. To succeed on a false arrest claim under either the Fourth Amendment or Pennsylvania law, Plaintiff must demonstrate that she was arrested and that the arrest was made without probable cause. See, e.g., Bell v. City of Harrisburg, 457 F. App'x 164, 166 (3d Cir. 2012); Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994). Defendants contend that summary judgment must be entered in their favor on these claims because

---

[2] Defendants also moved for summary judgment on Plaintiff's Fourteenth Amendment claim (Doc. No. 15 at 15-16), but Plaintiff clarifies in her brief in opposition that she "did not intend to plead a separate due process violation under the Fourteenth Amendment" but, rather, "asserted her First and Fourth Amendment claims as incorporated under the Fourteenth Amendment." (Doc. No. 21 at 13).

Defendant Mellott did not arrest Plaintiff and because he had probable cause to issue the summons for disorderly conduct.  (Doc. No. 15 at 2-10, 20-22.)

### 1.     *Arrest or Restraint on Freedom of Movement*

Plaintiff's false arrest claims fail as a matter of law to the extent that they are based on the issuance of the summons for disorderly conduct.  See, e.g., Montgomery v. De Simone, 159 F.3d 120, 126 (3d Cir. 1998) ("A claim for false arrest, unlike a claim for malicious prosecution, covers damages only for the time of detention until the issuance of process or arraignment, and not more."); see also Colbert v. Angstadt, 169 F. Supp. 2d 352, 358-59 (E.D. Pa. 2001) (holding that a plaintiff could not establish a false arrest claim where he was not formally arrested but received a summons by mail, instructing him to appear in court on a particular date).  Further, the evidence of record reflects that Plaintiff was not formally arrested, as she was not handcuffed, fingerprinted, taken to a police station, required to post bond, or even removed from her apartment.  Although Defendant Mellott issued the summons, Plaintiff has set forth no evidence reflecting that a bond was posted or a warrant was required to secure her appearance at a court date.  Thus, the question before the Court becomes whether Plaintiff was "arrested" for purposes of the Fourth Amendment while she remained in her apartment in compliance with Defendant Mellott's purported instruction.  Absent a formal arrest, a plaintiff may only succeed on a false arrest claim if she establishes that a reasonable person in her position would have believed that "there [was] a 'restraint on freedom of movement of the degree of the degree associated with a formal arrest.'"  Colbert, 169 F. Supp. 2d at 359; see also United States v. Lampkin, 464 F.2d 1093, 1095 (3d Cir. 1972) ("There can be no arrest where there is no restraint, or where the person sought to be arrested is not conscious of any restraint."); 5 Am.

Jur. 2d Arrest § 4.

Plaintiff contends that she "felt that she was confined to her apartment and that she would be in trouble if she left" because Defendant Mellott "instructed her to return to her apartment and not to leave" and repeated this instruction after "Plaintiff advised [him] that she needed to take her daughter to the doctor." (Doc. No. 21 at 1-2.) In opposition, Defendants aver that "no reasonable person would believe that [Plaintiff] was confined to her apartment," especially in light of the facts that she "was already present inside of her apartment when [Defendant Mellott] arrived at the apartment complex" and that she voluntarily went to the complex office to explain her version of events to Defendant Mellott. (Doc. No. 15 at 5.) Further, Defendant Mellott testified at his deposition that he did not tell Plaintiff to remain in her apartment and that Plaintiff did not inform him that she needed to take her daughter to an appointment. (Doc. No. 11-5 at 9.) Viewing the facts in the light most favorable to Plaintiff, the Court finds that there is a genuine issue of material fact as to whether Defendant Mellott instructed Plaintiff to return to her apartment and not to leave until he spoke with her again. Accordingly, the Court cannot conclude as a matter of law that a reasonable person in Plaintiff's position would have felt free to leave the apartment. See Syfu v. Cooke, No. 00-cv-1264, 2002 WL 453225, at *3 (C.D. Cal. Mar. 20, 2002) (finding "a triable issue of fact whether the Defendants restrained Plaintiffs['] freedom of movement by a show of authority" where they ordered Plaintiffs out of their apartment and instructed them to remain at the top of the stairs and not to leave until the investigation was completed).

    2.  *Probable Cause*

Assuming that Plaintiff would be able to establish that Defendant Mellott restrained her

freedom of movement to the degree generally associated with a formal arrest, the next question becomes whether he had probable cause to do so. See, e.g., Bell, 457 F. App'x at 166. "The test for an arrest without probable cause is an objective one, based on the 'facts available to the officer at the moment of the arrest.'" Id. (quoting Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994)). "Probable cause to arrest requires more than mere suspicion; however, it does not require that the officer have evidence sufficient to prove guilt beyond a reasonable doubt." Orsatti v. N.J. State Police, 71 F.3d 480, 482-83 (3d Cir. 1995). Moreover, "[p]robable cause need only exist as to any offense that could be charged under the circumstances." Bell, 457 F. App'x at 166.

Here, it is undisputed that Defendant Mellott arrived at Geneva Greens in response to a call made by Ms. Anderson following her argument with Plaintiff. While Plaintiff disputes the accuracy of the statements provided to Defendant Mellott by Ms. Anderson and Ms. Zechman, she admits that Ms. Anderson and Ms. Zechman informed Defendant Mellott that Plaintiff was angry, yelling, using profanities, pointing her finger close to Ms. Anderson, and called Ms. Anderson either a "noisy bitch" or "nosy bitch." (Doc. No. 23 ¶¶ 26-33.) After investigating the situation, Defendant Mellott issued a summons to Plaintiff for disorderly conduct pursuant to 18 Pa. Cons. Stat. § 5503, which provides:

> (a) Offense defined – A person is guilty of disorderly conduct if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, he:
>
> (1) engages in fighting or threatening, or in violent or tumultuous behavior;
>
> (2) makes unreasonable noise;
>
> (3) uses obscene language, or makes an obscene gesture;

>> or
>
> (4) creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor.

"Under the statute, whether a defendant's words or acts rise to the level of disorderly conduct hinges upon whether they cause or unjustifiably risk a public disturbance. The cardinal feature of the crime of disorderly conduct is public unruliness which can or does lead to tumult and disorder." Commonwealth v. Fedorek, 946 A.2d 93, 100 (Pa. 2008) (internal quotation marks and citation omitted) (emphases in original).

Defendant Mellott issued the summons pursuant to Section 5503(a)(3) for "us[ing] obscene language towards the victim – to wit – called the victim a 'nosey bitch' in the presence of an independent witness." (Doc. No. 12-2 at 14.) The Pennsylvania Supreme Court has squarely addressed the definition of obscenity for purposes of this subsection:

> [L]anguage is obscene if it meets the test set forth in Miller v. California, 413 U.S. 15, 93 S. Ct. 2607, 37 L.Ed.2d 419 (1973): whether the average person would find that the language appealed to the prurient interests, whether the language depicted or described, in a patently offensive way, sexual conduct specifically defined by any applicable state law, and whether the language lacked serious literary, artistic, political, or scientific value.

Commonwealth v. Hock, 728 A.2d 943, 947 n.1 (Pa. 1999). Applying this test, courts have held that language similar to that purportedly uttered by Plaintiff and directed as Ms. Anderson, while vulgar, is not obscene. See Clifton v. Borough of Eddystone, 824 F. Supp. 2d 617, 623-24 (E.D. Pa. 2011) (finding the statement, "you asshole Eddystone mother fucking cop," was not obscene because it did not appeal to prurient interests); McCoy v. Edwards, No. 06-cv-1142, 2009 WL 1794749, at *5-*6 (M.D. Pa. June 23, 2009) (holding the statement, "stupid a–hole" was not

obscene); Tate v. W. Norriton Twp., 545 F. Supp. 2d 480, 487 (E.D. Pa. 2008) (holding the statements, "she needs f—ing help!" and "what, the f–k word?" were "emphatic, coarse, and disrespectful" but not obscene); Commonwealth v. Kelly, 758 A.2d 1284, 1288 (Pa. Super. Ct. 2000) ("[While] Appellant's use of the 'F— word' and use of the middle finger . . . were disrespectful, insulting and offensive, they were . . . not 'obscene' within the meaning of Section 5503(a)(3)."). Because nothing in the record indicates that Plaintiff used language of a sexual nature, the Court concludes that Defendant Mellott lacked probable cause to arrest or otherwise restrain her freedom of movement pursuant to Section 5503(a)(3).

Probable cause, however, "need only exist as to any offense that could be charged under the circumstances." Bell, 457 F. App'x at 166. Based on the evidence of record, a reasonable jury could conclude that Defendant Mellott had probable cause to restrain Plaintiff's freedom of movement pursuant to Section 5503(a)(1) or (a)(4). First, under Section 5503(a)(1), a person is guilty of disorderly conduct if she "engages in fighting or threatening, or in violent or tumultuous behavior." In Plaintiff's view, it is not possible that Plaintiff could be found guilty of violating this subsection because an incident involving only three people cannot constitute "public inconvenience, annoyance or alarm," as required by Section 5503. (Doc. No. 21 at 6 n.2.) This argument lacks merit in light of the Pennsylvania Supreme Court's pronouncement that "when an offender engages in fighting or threatening, or in violent or tumultuous behavior in a public arena, even when that conduct is directed at only one other person, the offender may be subject to conviction for disorderly conduct." Fedorek, 946 A.2d at 100 (emphasis in original). Even when viewing the evidence of record in the light most favorable to Plaintiff, the Court finds that a genuine issue of material fact exists as to whether Defendant Mellott had probable cause to

9

arrest or detain Plaintiff for engaging "in fighting or threatening, or in violent or tumultuous behavior" under Section 5503(a)(1).

Second, under Section 5503(a)(4), a person is guilty of disorderly conduct if she "creates a hazardous or physically offensive condition by any act which serves no legitimate purpose of the actor." A hazardous condition is one that "involves danger or risk," particularly situations raising the possibility of injuries from public disorder. Commonwealth v. Williams, 574 A.2d 1161, 1164 (Pa. Super. Ct. 1990). While Plaintiff disputes its accuracy, Plaintiff admits that Ms. Anderson made the following statement to Defendant Mellott: "[Plaintiff] came into the office screaming at me . . . She called me a 'noisy bitch' and put the finger in my face – she continued to scream at me, getting closer to me, Tammy told her she had to leave – [Plaintiff] continued to speak . . ." (Doc. No. 12-2 at 11; Doc. No. 23 ¶¶ 28-33.) In light of markedly divergent accounts of the argument between Plaintiff and Ms. Anderson, the Court finds that a reasonable jury could find that Plaintiff's conduct was sufficiently boisterous, confrontational, or threatening to constitute a hazardous or physically condition under Section 5503(a)(4).

### 3. Qualified Immunity

In light of the genuine issues of material fact remaining in this action, the Court cannot conclude that Plaintiff's false arrest claims fail as a matter of law. Even if Defendant Mellott did violate Plaintiff's rights, however, Defendants argue that he is entitled to qualified immunity. (Doc. No. 15 at 11-15.) The doctrine of qualified immunity protects state actors "from undue interference with their duties and from potentially disabling threats of liability." Elder v. Holloway, 510 U.S. 510, 514 (1994). To determine the applicability of qualified immunity, the Court must determine: (1) whether, when considering the facts in the light most favorable to the

plaintiff, the officer's conduct violated a constitutional right; and (2) whether the constitutional right at issue was clearly established at the time of the arrest. Pearson v. Callahan, 555 U.S. 223, 232-33 (2009). "The second prong of the qualified immunity analysis is focused upon whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Egolf v. Witmer, 526 F.3d 104, 110 (3d Cir. 2008) (internal quotation marks and citation omitted). The Supreme Court has determined that the two prongs of the qualified immunity inquiry may be taken up in either order, at the discretion of the trial court. Pearson, 555 U.S. at 821-22.

Considering the facts most favorable to Plaintiff, a reasonable police officer would understand that arresting – or restraining the freedom of movement of – Plaintiff would violate clearly established law. As discussed, the law is well settled that a person cannot be lawfully arrested for disorderly conduct merely for using profane or vulgar language. According to Plaintiff's account of the incident, Plaintiff pointed her finger and called Ms. Anderson a "nosy biddy." While Plaintiff does admit that she was angry, she alleges no physical intimations of hostility. These facts do not support a finding that a reasonable police officer would believe that he had probable cause to arrest Plaintiff or restrain Plaintiff's freedom of movement. To the contrary, case law indicates Plaintiff's rights were clearly established. See, e.g., Tate, 545 F. Supp. 2d at 487 (finding that the defendant was not entitled to qualified immunity because, under the facts most favorable to the plaintiff, "no reasonable patrolman would have believed that" the statements – "she needs f—ing help!" and "what, the f–k word?" – "would give rise to probable cause to arrest [the plaintiff] for disorderly conduct."). The Court, therefore, finds that there is "sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put

defendant on notice that his or her conduct is constitutionally prohibited." McLaughlin v. Watson, 271 F.3d 566, 572 (3d Cir. 2001). Accordingly, Defendant Mellott is not entitled to qualified immunity, and the Court will deny Defendants' motion for summary judgment on Plaintiff's false arrest claims.

### B. First Amendment Retaliation Claim

Both parties have moved for summary judgment on Plaintiff's First Amendment retaliation claim.[3] "In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." Thomas v. Independence Twp., 463 F.3d 285, 296 (3d Cir. 2006). The second element is of paramount importance "in determining whether a cognizable First Amendment claim has been stated." Id.

Defendants do not contend that Plaintiff's speech during her argument with Ms. Anderson was not constitutionally protected, and the evidence of record reflects that a reasonable jury could conclude that her speech was protected by the First Amendment. See Eichenlaub v.

---

[3] In both her brief in support of her motion for partial summary judgment and her brief in opposition to Defendants' motion for summary judgment, Plaintiff states that her First Amendment claim should be construed not as a retaliation claim but, rather, as a "direct violation" claim, requiring her "to prove only that she was deprived of a constitutional right and that she suffered resultant damage." (Doc. No. 21 at 8; Doc. No. 22 at 3.) In support of this argument, Plaintiff relies on Trotman v. Board of Trustees of Lincoln University, 635 F.2d 216 (3d Cir. 1980), and Yamrus v. Township of Washington, No. 08-cv-2842, 2008 WL 5002928 (E.D. Pa. Nov. 20, 2008). Neither case, however, recognizes a "direct violation" First Amendment claim. Rather, in Trotman, a public employee raised a First Amendment retaliation claim based on engagement in protected activity, 635 F.2d at 224-25, and, in Yamrus, the plaintiff moved for a declaratory judgment that his First Amendment rights were violated after he was purportedly wrongfully charged with violating a statute prohibiting insulting the flag, 2008 WL 5002928, at *1.

Twp. of Indiana, 385 F.3d 274, 282-83 (3d Cir. 2004) ("[E]xcept for certain narrow categories deemed unworthy of full First Amendment protection – such as obscenity, 'fighting words' and libel – all speech is protected by the First Amendment."). With respect to the second element, the Court finds that Plaintiff has set forth sufficient evidence from which a jury could conclude that Defendant Mellott took retaliatory action sufficient to deter a person of ordinary firmness from exercising her constitutional rights. She has presented evidence that, following her argument with Ms. Anderson, Defendant Mellott ordered her not to leave her apartment and issued her a summons for disorderly conduct. The effect of the retaliatory conduct "need not be great in order to be actionable, but it must be more than de minimis." McKee v. Hart, 436 F.3d 165, 170 (3d Cir. 2006) (internal quotation marks omitted). The evidence of record reflects that Plaintiff has produced evidence exceeding "this low threshold." Clifton, 824 F. Supp. 2d at 628.

Regarding the third element, Plaintiff must establish a causal link between her constitutionally protected speech and the retaliatory action. Viewing the evidence in the light most favorable to Plaintiff, the timing of Plaintiff's detention in her apartment and the issuance of the summons for disorderly conduct establishes a likelihood that they were carried out in response to her statement to Ms. Anderson. See Estate of Smith v. Morasco, 318 F.3d 497, 512 (3d Cir. 2003). However, the evidence, when viewed in the light most favorable to Defendants, supports the conclusion that Defendant Mellott arrested – or detained – Plaintiff and issued the summons because he believed he had probable cause to do so. Thus, there exists a genuine issue of material fact regarding this element of Plaintiff's retaliation claim. Further, the Court finds no basis on which to find that Defendant Mellott is entitled to qualified immunity on this claim. See, e.g., Losch v. Parkesburg, 736 F.2d 903, 907-08 (3d Cir. 1984) ("[I]nstitution of criminal

action to penalize the exercise of one's First Amendment rights is a deprivation cognizable under § 1983."). Accordingly, the Court will deny both parties' motions for summary judgment on Plaintiff's First Amendment retaliation claim.

### C. Failure-to-Train Claim

Finally, Plaintiff has raised a failure-to-train claim pursuant to Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978), against Defendant Upper Allen.[4] Liability under Section 1983 for failure to train or supervise municipal employees requires that the omission amount to "deliberate indifference" to a constitutional right. Connick v. Thompson, 131 S. Ct. 1350, 1359-60 (2011). This stringent standard is satisfied "where the need for more or different training is obvious, and inadequacy very likely to result in violation of constitutional rights." Carter v. City of Phila., 181 F.3d 339, 357 (3d Cir. 1999). "In other words, a municipality can only be liable under § 1983 where the failure to train demonstrates a 'deliberate' or 'conscious' choice by the municipality." Doe v. Luzerne Cnty., 660 F.3d 169, 179 (3d Cir. 2011). To be held liable, a municipality must have some notice that training is not adequate, and a "pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." Connick, 131 S. Ct. at 1360 (citation omitted). "A less stringent standard of fault for a failure-to-train clam would result in de facto respondeat superior liability on municipalities." Id.

Here, Plaintiff has not set forth evidence of a pattern of constitutional violations by

---

[4] Although Plaintiff does not explicitly raise a failure-to-train claim in her complaint, she clarifies in her brief in opposition that this claim "is based upon [Defendant Upper Allen's] complete lack of training of police officers in the legal principles applicable to 'obscenity' cases under the disorderly conduct provisions of the Pennsylvania Crimes Code." (Doc. No. 21 at 14.)

untrained employees or that Defendant Upper Allen acted with the requisite deliberate indifference. Further, Plaintiff has not shown that the need for Defendant Upper Allen to provide more or different training on the obscenity subsection of 18 Pa. Cons. Stat. § 5503 to avoid constitutional violations was patently obvious. As such, summary judgment will be entered in favor of Defendants on Plaintiff's failure-to-train claim.

## IV.   CONCLUSION

In light of the foregoing analysis, the Court concludes that Defendants are not entitled to summary judgment on Plaintiff's false arrest claims except to the extent that they are based on the theory that the issuance of the summons for disorderly conduct constituted an arrest. Further, the Court finds that genuine issues of material fact prevent the Court from entering summary judgment in either party's favor on Plaintiff's First Amendment retaliation claim. The evidence of record, however, reflects that Defendant Upper Allen is entitled to summary judgment with respect to Plaintiff's failure-to-train claim. An order consistent with this memorandum follows.

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **MARY K. PRIMROSE,** | : |
|     Plaintiff | : |
| | :   **Civil Action No. 1:11-00835** |
| v. | : |
| | :   (Chief Judge Kane) |
| **TRENT MELLOTT and TOWNSHIP OF** | : |
| **UPPER ALLEN,** | : |
|     Defendants | : |

## ORDER

**AND NOW**, on this 19th day of June 2012, **IT IS HEREBY ORDERED THAT** Plaintiff's motion for partial summary judgment (Doc. No. 12) is **DENIED** and Defendants' motion for summary judgment (Doc. No. 11) is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Defendants' motion for summary judgment on Plaintiff's First Amendment retaliation claim is **DENIED**;

2. Defendants' motion for summary judgment on Plaintiff's false arrest claims are **DENIED** except to the extent that they are based on the theory that the issuance of the summons for disorderly conduct constituted an arrest or restraint on freedom of movement of the degree associated with a formal arrest; and

3. Defendants' motion for summary judgment on Plaintiff's failure-to-train claim is **GRANTED**, and the Clerk of Court is directed to **TERMINATE** Defendant Township of Upper Allen from this action.

                                              S/ Yvette Kane
                                              Yvette Kane, Chief Judge
                                              United States District Court
                                              Middle District of Pennsylvania